**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TAMIKA CLARK,<br><br>              Plaintiff,<br><br>    v.<br><br>IMERYS TALC AMERICA, INC., *et al.*,<br><br>              Defendants. | Civil Action No. 21-11876 (MAS) (RLS) |
| DANNY DAVIS,<br><br>              Plaintiff,<br><br>    v.<br><br>IMERYS TALC AMERICA, INC., *et al.*,<br><br>              Defendants. | Civil Action No. 21-11878 (MAS) (RLS) |
| DONNA HALL,<br><br>              Plaintiff,<br><br>    v.<br><br>IMERYS TALC AMERICA, INC., *et al.*,<br><br>              Defendants. | Civil Action No. 21-11880 (MAS) (RLS) |

| | |
|---|---|
| SUSAN HALUZAK,<br><br>    Plaintiff,<br><br>  v.<br><br>IMERYS TALC AMERICA, INC., *et al.*,<br><br>    Defendants. | Civil Action No. 21-11874 (MAS) (RLS) |
| JANELLE STEVENS,<br><br>    Plaintiff,<br><br>  v.<br><br>IMERYS TALC AMERICA, INC., *et al.*,<br><br>    Defendants. | Civil Action No. 21-14150 (MAS) (RLS) |
| JANENE TOLLIS,<br><br>    Plaintiff,<br><br>  v.<br><br>IMERYS TALC AMERICA, INC., *et al.*,<br><br>    Defendants. | Civil Action No. 21-11884 (MAS) (RLS) |

| | |
|---|---|
| DAVID VANNESS,<br><br>　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>IMERYS TALC AMERICA, INC., *et al.*,<br><br>　　　　　　　Defendants. | Civil Action No. 21-11885 (MAS) (RLS) |
| ARCHIE WELLMAN,<br><br>　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>IMERYS TALC AMERICA, INC., *et al.*,<br><br>　　　　　　　Defendants. | Civil Action No. 21-11888 (MAS) (RLS) |
| DEBBIE WYNN,<br><br>　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>IMERYS TALC AMERICA, INC., *et al.*,<br><br>　　　　　　　Defendants. | Civil Action No. 21-11882 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

　　This matter comes before the Court upon Defendant PTI Union, LLC's ("Defendant") Omnibus Motion to Dismiss Plaintiff Tamika Clark ("Clark"), Plaintiff Danny Davis ("Davis"),

3

Plaintiff Donna Hall ("Hall"), Plaintiff Susan Haluzak ("Haluzak"), Plaintiff Janelle Stevens ("Stevens"), Plaintiff Janene Tollis ("Tollis"), Plaintiff David Vanness ("Vanness"), Plaintiff Archie Wellman ("Wellman"), and Plaintiff Debbie Wynn's ("Wynn") (collectively "Plaintiffs") short form complaints[1] (the "Omnibus Motion").[2] No Plaintiffs, individually or collectively, opposed the Omnibus Motion. After consideration of the Omnibus Motion and relevant briefing, the Court decides the Motion without oral argument pursuant to Local Civil Rule 78.1. For the reasons outlined below, the Omnibus Motion is granted in part and denied in part.

I.  **BACKGROUND**[3]

   A.  **Procedural Background**

Between May 27, 2021 and July 26, 2021, all Plaintiffs filed their short form complaints in this Court. (Haluzak Union Compl., 3:21-11874, ECF No. 1; Clark Union Compl., 3:21-11876, ECF No. 1; Davis Union Compl., 3:21-11878, ECF No. 1; Hall Union Compl., 3:21-11880, ECF No. 1; Tollis Union Compl., 3:21-11884, ECF No. 1; Wynn Union Compl., 3:21-11882, ECF No.

---

[1] With the exception of Stevens, all Plaintiffs also filed an exhibit to their short form complaints titled "Additional Counts to Plaintiff's Short Form Complaint" (the "Union Complaint" or collectively the "Union Complaints"). (*See generally* Haluzak Union Compl. Ex., 3:21-11874, ECF No. 1-1; Clark Union Compl. Ex., 3:21-11876, ECF No. 1-1; Davis Union Compl. Ex., 3:21-11878, ECF No. 1-1; Hall Union Compl. Ex., 3:21-11880, ECF No. 1-1; Tollis Union Compl. Ex., 3:21-11884, ECF No. 1-1; Wynn Union Compl. Ex., 3:21-11882, ECF No. 1-1; Vanness Union Compl. Ex., 3:21-11885, ECF No. 1-1; Wellman Union Compl. Ex., 3:21-11888, ECF No. 1-1.) The Union Complaints detail allegations and claims against Defendant exclusively. (*See id.*)

[2] The Omnibus Motion for each Plaintiff can be found at the following case and ECF numbers: Haluzak Mot. Dismiss, 3:21-11874, ECF No. 5; Clark Mot. Dismiss, 3:21-11876, ECF No. 6; Davis Mot. Dismiss, 3:21-11878, ECF No. 5; Hall Mot. Dismiss, 3:21-11880, ECF No. 6; Tollis Mot. Dismiss, 3:21-11884, ECF No. 5; Wynn Mot. Dismiss, 3:21-11882, ECF No. 5; Vanness Mot. Dismiss 3:21-11885, ECF No. 6; Wellman Mot. Dismiss 3:21-11888, ECF No. 5; Stevens Mot. Dismiss., 3:21-14150, ECF No. 3.

[3] For purposes of considering the Omnibus Motion, the Court accepts all factual allegations in the Union Complaints as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

1; Vanness Union Compl., 3:21-11885, ECF No. 1; Wellman Union Compl., 3:21-11888, ECF No. 1.) With the exception of Stevens, all Plaintiffs also filed an exhibit containing the Union Complaint. (*See generally* Haluzak Union Compl. Ex., 3:21-11874; Clark Union Compl. Ex., 3:21-11876; Davis Union Compl. Ex., 3:21-11878; Hall Union Compl. Ex., 3:21-11880; Tollis Union Compl. Ex., 3:21-11884; Wynn Union Compl. Ex., 3:21-11882; Vanness Union Compl. Ex., 3:21-11885; Wellman Union Compl. Ex., 3:21-11888, ECF No. 1-1.) The Union Complaint details all allegations and claims against Defendant. (*See id.*)

Importantly, while Stevens's short form complaint lists Defendant as a defendant, Stevens does not affix the Union Complaint to her short form complaint, as the other Plaintiffs do. (*See generally* Stevens Compl., 3:21-14150, ECF No. 2.) As Defendant is not mentioned in the Master Complaint, (*see generally* Master Compl., 3:16-2738, ECF No. 82), and Stevens does not provide any factual allegations against Defendant through her short form complaint, Defendant's motion to dismiss Stevens' Complaint against it is **GRANTED**.[4]

The remaining eight Plaintiffs affix the Union Complaint to their short form complaints. (*See generally* Haluzak Union Compl. Ex.; Clark Union Compl. Ex.; Davis Union Compl. Ex.; Hall Union Compl. Ex.; Tollis Union Compl. Ex.; Wynn Union Compl. Ex.; Vanness Union Compl. Ex.; Wellman Union Compl., Ex.) Furthermore, all Plaintiffs' Union Complaints are identical with only one exception: Plaintiffs Hall, Tollis, and Vanness do not bring wrongful death claims against Defendant. (*See id.*) As such, the Court's below recited allegations and analysis apply equally to all Plaintiffs' Union Complaints, unless the Court expressly states otherwise or except where the Court considers a Plaintiff's wrongful death claim.

---

[4] Accordingly, for the remainder of this Memorandum Opinion, "Plaintiffs" refers to all Plaintiffs except for Stevens.

### B. Factual Background

Defendant is a Delaware Limited Liability Company ("LLC") in the business of "processing, bottling, labeling, packaging, and/or distributing talcum powder-based products including Johnson & Johnson's ("J&J") Baby Powder and Shower to Shower products ("STS") (collectively the "Products")." (Union Compl.[5] ¶¶ 1-2.) Talcum powder is comprised of talc, an inorganic mineral that is mined from the earth. (*Id.* ¶ 4.) The Products handled by Defendant are almost entirely comprised of talc. (*Id.* ¶ 5.)

At all times relevant to Plaintiffs' claims, J&J was engaged in the business of manufacturing, marketing, testing, packaging, labeling, promoting, selling, and distributing the Products. (*Id.* ¶ 8.) J&J outsourced many of these functions, including manufacturing, testing, packaging, and labeling the Products, to Defendant, who performed these functions at J&J's direction. (*Id.*)

J&J's Baby Powder was historically advertised and promoted as a product that is "clinically proven gentle and mild" and that could be used to eliminate skin friction. (*Id.* ¶ 9.) During the time relevant to Plaintiffs' claims, J&J directed advertisements for J&J's Baby Powder to women, specifically advising that the product is "[f]or . . . use every day to help [skin] feel soft, fresh, and comfortable." (*Id.*) J&J did not disclose any potential risks or health hazards associated with J&J's Baby Powder when selling the product to the public. (*See id.*)

---

[5] Where the Court cites "Union Compl." with no individual's name identified, the citation refers collectively and simultaneously to all Plaintiffs' Union Complaints and the cited paragraph(s) therein. (Haluzak Union Compl. Ex., 3:21-11874; Clark Union Compl. Ex., 3:21-11876; Davis Union Compl. Ex., 3:21-11878; Hall Union Compl. Ex., 3:21-11880; Tollis Union Compl. Ex., 3:21-11884; Wynn Union Compl. Ex., 3:21-11882; Vanness Union Compl. Ex., 3:21-11885; Wellman Union Compl. Ex., 3:21-11888.)

At all times relevant to Plaintiffs' claims, J&J also advertised and marketed its STS product as safe for use by women, advertising that "[a] sprinkle a day keeps odor away." (*Id.* ¶ 10.) J&J also advertised that STS could be used in the female genital area to avoid irritation from friction. (*Id.*) In reliance on J&J's advertising and the Products' promotions, Plaintiffs used the Products in their genital area for feminine hygiene purposes. (*Id.* ¶ 11.)

As early as 1971, scientific research identified an association between talc and ovarian cancer. (*Id.* ¶ 12.) In 1982, an epidemiologic study conducted by Dr. Daniel Cramer and others concluded that women who reported genital talc use had a 92% greater risk of being diagnosed with ovarian cancer. (*Id.* ¶ 13.) In 1993, the United States National Toxicology Program (the "Toxicology Program") published a study that found clear evidence of carcinogenic activity associated with talc. (*Id.* ¶ 15.) As a result of the Toxicology Program's findings, the Cosmetic Toiletry and Fragrance Association ("CTFA") formed the Talc Interested Party Task Force ("TIPTF") in order to pool financial resources to defend talc use and prevent regulation of the industry. (*Id.* ¶ 16.) J&J Inc., J&J Consumer Inc., and Luzenac, now collectively known as "Imerys Talc," were all members of the TIPTF. (*Id.*) For four decades, Imerys Talc sought to prevent regulation of talc despite knowledge of the true hazards of the substance. (*Id.*) On several occasions, J&J was directly informed, or Imerys Talc should generally have been aware, that talc was dangerous or that there was a viable alternative, cornstarch, that could have avoided the hazards of talc. (*Id.* ¶¶ 17-21.) Despite this general or direct awareness of talc's dangers, J&J and Imerys Talc failed to act on such warnings before 2006. (*Id.*)

By 2006, Imerys Talc began placing warnings on the material safety data sheets ("MSDS") sent to J&J and Defendant. (*Id.* ¶ 22.) The MSDS supplied by Imerys Talc expressly warned J&J and Defendant that the Products carried an ovarian cancer risk for any women applying the

7

Products to their genital area. (*Id.* ¶ 23.) Notwithstanding Imerys Talc's hazard disclosure, Defendant received talc shipments from Imerys Talc, accompanied by express ovarian cancer warnings, but disregarded such warnings and proceeded to process, bottle, mislabel, mispackage, and distribute the Products out of its facility without any affixed warnings. (*Id.* ¶ 24.) Defendant's mislabeling and mispackaging occurred at its facility in Union, Missouri. (*Id.* ¶ 25.)

In light of the above allegations, Plaintiffs leverage ten Counts against Defendant in the Union Complaints. These ten Counts include: (1) Strict Liability for Failure to Warn; (2) Strict Liability for Defective Manufacture and Design; (3) Negligence; (4) Breach of Express Warranty; (5) Breach of Implied Warranties; (6) Civil Conspiracy; (7) Concert of Action; (8) Wrongful Death;[6] (9) Punitive Damages; and (10) Damages. (*See generally* Union Compls.) Defendant moves to dismiss all Plaintiffs' claims against it. (Def.'s Moving Br.[7])

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2)[8] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court

---

[6] This claim is only relevant to Hall, Tollis, and Vanness's Union Complaints.

[7] Defendant's moving brief can be found at the following case and ECF numbers: Haluzak Mot. Dismiss, 3:21-11874, ECF No. 5-1; Clark Mot. Dismiss, 3:21-11876, ECF No. 6-1; Davis Mot. Dismiss, 3:21-11878, ECF No. 5-1; Hall Mot. Dismiss, 3:21-11880, ECF No. 6-1; Tollis Mot. Dismiss, 3:21-11884, ECF No. 5-1; Wynn Mot. Dismiss, 3:21-11882, ECF No. 5-1; Vanness Mot. Dismiss 3:21-11885, ECF No. 6-1; Wellman Mot. Dismiss 3:21-11888, ECF No. 5-1; Stevens Mot. Dismiss., 3:21-14150, ECF No. 3-1.

[8] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state that the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### III. DISCUSSION

Defendant contends that all Counts in the Union Complaints must fail for two reasons: (1) because Plaintiffs fail to plead facts with the requisite specificity to survive a motion to dismiss; and (2) because Plaintiffs "fail to [successfully] plead the requisite elements of [their] claims." (*See generally* Def.'s Moving Br.) Critically, however, both of Defendant's arguments depend on documents extraneous to the pleadings. The Court, then, must first assess whether it is appropriate to consider such evidence at this stage.

#### A. Consideration of Extrinsic Evidence at the 12(b)(6) Stage

As previously set forth, Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what

the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (alteration in original) (quoting *Conley*, 355 U.S. at 47). From this general rule it follows that when assessing a complaint, a court must only consider the factual allegations set forth in the complaint and whether such factual allegations can sustain the claims a plaintiff sets forth against a defendant. *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016) ("[A] court considering a motion to dismiss under [Rule] 12(b)(6) may consider *only* the allegations contained in the pleading to determine its sufficiency." (quoting *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 290 (3d Cir. 2014)). The court, therefore, may not consider any documents or exhibits that are not "integral to or explicitly relied upon in the complaint" without "converting the motion to dismiss into one for summary judgment." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to . . . the court, the motion must be treated as one for summary judgment under Rule 56 [and] all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion").

An extrinsic document is integral to the complaint only where the plaintiff's "claims in the complaint are 'based' on [the] extrinsic document." *Id.* (quoting *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993)). Affidavits submitted by a defendant and not mentioned or relied upon in a plaintiff's complaint "clearly may not be considered at [the motion to dismiss] stage." *Id.* (citing *Cent. Contracting Co. v. Md. Cas. Co.*, 367 F.2d 341, 343 (3d Cir. 1966)).

In moving to dismiss the Union Complaints, Defendant submitted an affidavit from Edward "Tee" Noland, Jr. (the "Noland Affidavit"), a former Chief Executive Officer of Defendant, for three critical propositions: (1) that there are six distinct STS products; (2) that Defendant only was

involved in the processing of one of those six STS products, the product "Shimmer Effects"; and (3) that Defendant did not acquire a right to operate a powder facility and begin blending Shimmer Effects until 2008. (Def.'s Moving Br. 3, 3 n.5, 4, 10; *see also* Ex. C. to Def.'s Moving Br., Noland Decl. ¶¶ 5, 8, 12-13, 16.) None of these facts, however, are mentioned or alluded to in the Union Complaints by any Plaintiff. (*See generally* Haluzak Union Compl. Ex., 3:21-11874; Clark Union Compl. Ex., 3:21-11876; Davis Union Compl. Ex., 3:21-11878; Hall Union Compl. Ex., 3:21-11880; Tollis Union Compl. Ex., 3:21-11884; Wynn Union Compl. Ex., 3:21-11882; Vanness Union Compl. Ex., 3:21-11885; Wellman Union Compl. Ex., 3:21-11888.) Moreover, nothing in the Union Complaints suggests that any claim in the Union Complaints is "based on" the Noland Affidavit. (*See id.*)[9] Accordingly, for the reasons outlined above, the Court will not rely on any argument Defendant makes that is dependent upon facts introduced in the Noland Affidavit. Instead, in assessing Defendant's arguments in moving to dismiss the Union Complaints, the Court will rely strictly on the allegations contained in Plaintiffs' Union Complaints.

---

[9] The Court also notes that Plaintiffs have not had an opportunity to come forth with evidence to counter the evidence that Defendant seeks to introduce, nor have Plaintiffs had an opportunity to conduct discovery. As such, the Court declines to treat Defendant's motion as one for summary judgment where Plaintiffs did not oppose the Omnibus Motion and have not had an opportunity to conduct discovery. *D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 329-30 (3d Cir. 2022) ("[O]nce [a] motion is converted to a motion for summary judgment, reasonable allowance must be made for the parties to obtain discovery. Otherwise, weighing the new factual assertions against the facts pleaded in the complaint would invite courts to consider facts and evidence that have not been tested in formal discovery." (internal quotation marks and citations omitted)); *Gibson v. Mayor and Council of City of Wilmington*, 355 F.3d 215, 223-24 (3d Cir. 2004) ("[A] district court may not grant summary judgment *sua sponte* unless the court gives notice and an opportunity to oppose summary judgment."); *see also Bardley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069-70 (3d Cir. 1990) ("[I]n the absence of a formal motion for summary judgment, [a] plaintiff [is] under no formal compulsion to marsha[l] all of the evidence in support of his claims.").

**B.     Defendant's Specificity Arguments**

Defendant's first contention for dismissing all of Plaintiffs' claims is that Plaintiffs' allegations are insufficiently specific for Defendant to ascertain the allegations against it. (Def.'s Moving Br. 3.) In making this argument, Defendant expressly relies on the Noland Affidavit to support the proposition that there were six distinct STS products produced by Defendant, but that no Plaintiff avers which of the six STS products the individual Plaintiffs used. (*Id.* at 3, 3 n.5.) As elucidated above, this contention necessitates this Court's reliance on the Noland Affidavit for the proposition that there were six STS products and that Defendant only produced one of them. The Court cannot rely on the Noland Affidavit at this stage, and instead must rely on the allegations in the Union Complaints. The allegations in the Union Complaints are sufficiently specific to survive the Omnibus Motion. Plaintiffs' Union Complaints allege, and this Court credits, that Defendant "has been in the business of processing, bottling, labeling, packaging, and/or distributing talcum powder-based products, including" J&J's Baby Powder and STS at "all relevant times." (Union Compl. ¶ 2.) Accordingly, Plaintiffs' allegations survive Defendant's first specificity contention.

Separately, Defendant also argues that no Plaintiff provides sufficient factual allegations regarding the dates they used the Products.[10] (Def.'s Moving Br. 6-7 ("[E]ach Plaintiff omits any mention of the actual dates of their alleged use of the [P]roducts, resorting instead to vaguely referencing decades-long time-spans.").) This argument is unpersuasive. It would be untenable for Plaintiffs to set forth each specific date that they used the Products over several decades of use. Instead, the Court finds that Plaintiffs' listed date ranges are sufficient to survive the Omnibus Motion. (*See, e.g.*, Clark Short Form Compl. ¶ 14 (providing, as all Plaintiffs' short form

---

[10] The Court notes that Defendant provides no case law to support this proposition. (*See* Def.'s Moving Br. 6-7.)

complaints do, a range of dates (in Clark's case, approximately 1973 to approximately 2007) that they used either J&J Baby Powder, STS, or both).) Accordingly, Plaintiffs' allegations survive Defendant's second specificity contention.

### C.  Defendant's Failure to State a Claim Arguments

Defendant next challenges each individual claim brought against it in the Union Complaints, contending that Plaintiffs fail to "plead the requisite elements of those claims" and/or the claims fail as a matter of law. (Def.'s Moving Br. 11.) Defendant also contends that four individual Plaintiffs cannot sustain claims against Defendant because those four Plaintiffs used the Products before Defendant's involvement with STS began. (*Id.* at 9.) The Court first turns to the contentions against the individual Plaintiffs, before turning to Defendant's other arguments.

#### i.  *Contentions Against Individual Plaintiffs*

Defendant maintains that four individual Plaintiffs, Clark, Davis, Haluzak, and Vanness, cannot sustain actions against Defendant because they "affirmatively allege [that] they used a talcum powder product or were diagnosed [with cancer] before [Defendant's] existence." (*Id.*) Critically, however, Defendant extrapolates the date Defendant came into "existence" and acquired the rights to produce an STS product from another extrinsic document not integral to or relied upon in the Union Complaints: the affidavit of Mike Green ("Green Affidavit"). (*Id.* at 9-11; Ex. D. to Def.'s Moving Br., Green Affidavit, ECF No. 5-5; *see also* Ex. C. to Def.'s Moving Br., Noland Decl. ¶ 16 ("[O]n April 1, 2008, [Defendant] acquired the rights to operate a powder manufacturing facility in Union, Missouri").) For the reasons stated above, the Court will not consider the Green Affidavit at this stage. Instead, the Court must again consider only the allegations in the Union Complaints as to when Defendant "came into existence." (Def.'s Moving Br. 9.)

There is no express allegation in the Union Complaints as to when Defendant's involvement with the Products began. Instead, the Union Complaints allege that "[a]t all relevant times, Defendant . . . has been in the business of processing, bottling, labeling, packaging, and/or distributing talcum powder-based products, including [J&J's] Baby Powder and [STS]." (Union Compl. ¶ 2.) This is sufficient to allege that Defendant, at all times relevant to the Union Complaints, including the periods of Clark, Davis, Haluzak, and Vanness's use, was involved in the manufacture or processing of the Products. Accordingly, Clark, Davis, Haluzak, and Vanness's actions do not fail against Defendant on grounds that they used the Products before Defendant's "existence."

    ii. *Strict Liability Claims*

Turning to the individual claims that Defendant seeks to dismiss, Defendant first contends that "Plaintiffs' strict liability claims against [Defendant] fail because Plaintiffs did not: 1) allege that they used any talcum powder product connected to [Defendant]; and 2) plead a causal relationship, an essential element of such claims, against [Defendant]." (Def.'s Moving Br. 11.) First, Defendant's argument that Plaintiffs did not allege that they used any talcum powder product connected to Defendant is predicated on facts in the Noland Affidavit, i.e., that there are several types of STS products and Plaintiffs failed to allege which STS product caused their harm. (*See id.* at 11-12.) For the reasons described in detail above, Plaintiffs sufficiently allege that Defendant was involved in the manufacture and processing of the Products at all relevant times. (Union Compl. ¶ 2.)

Second, Defendant cites to and analyzes two cases in arguing that Plaintiffs' strict liability claims must be dismissed because they "have not alleged that they used any specific talc product connected to [Defendant]." (Def.'s Moving Br. 12-13 (citing *City of St. Louis v. Benjamin Moore*

14

*& Co.*, 226 S.W.3d 110 (Mo. 2007) and *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241 (Mo. 1984)).) Both cited cases, however, were decided at the summary judgment stage, not at the motion to dismiss stage. *Benjamin Moore*, 226 S.W.3d at 113; *Zafft*, 676 S.W.2d at 243-44. For these reasons, Defendant's motion to dismiss Plaintiffs' strict liability claims is denied.

> *iii.    Negligence Claim*

Defendant next moves to dismiss Plaintiffs' negligence claim. (Def.'s Moving Br. 13.) Again, Defendant contends that "Plaintiffs have failed to plead any causal connection," and in doing so, Defendant relies on the same two summary judgment cases cited above to make its argument. (*Id.*) For the reasons mentioned above, this reliance is misguided, and if anything, exhibits that Defendant's motion can only properly be brought as a motion for summary judgment. Accordingly, Defendant's motion to dismiss Plaintiffs' negligence claims is denied.

> *iv.    Breach of Express Warranty, Breach of Implied Warranties, Civil Conspiracy, Concert of Action, and Wrongful Death (where applicable)*

Defendant next moves to dismiss a plethora of Plaintiffs' claims for the same reasons Defendant identifies above: Plaintiffs fail to identify a specific product that Defendant produced that caused their harm. (*Id.* at 14.) Again, this general argument fails as to Plaintiffs' Breach of Express Warranty, Civil Conspiracy, and Wrongful Death claims. Defendant, however, brings specific arguments with respect to Plaintiffs' implied warranty claims and concert of action claims. (*Id.* at 14-15.)

First, with respect to Plaintiffs' implied warranty claims, Defendant contends that "each Plaintiff fails to allege that notice of any breach was provided to [Defendant] 'within a reasonable time after [s]he discover[ed] or should have discovered' the breach." (*Id.* at 14 (alterations in original) (quoting Mo. Rev. Stat. § 400.2-607(3)(a)).) The Court is not persuaded that Plaintiffs had an obligation to notify Defendant of a breach of warranty. To be clear, under Missouri law,

notice is only required to be sent from a buyer to "the immediate seller, not the manufacturer" of a product. *Kansas City v. Keene Corp.*, 855 S.W.2d 360, 369 (Mo. 1993) (citation omitted).

Here, it is unclear if Plaintiffs intend to allege that Defendant was the immediate seller of the Products to Plaintiffs. (Union Compl. ¶¶ 8, 43, 51, 53 84 (describing Defendant as, in part, "selling and/or distributing the Products").) While the Union Complaints clearly state that Defendant was "engaged in the business of . . . selling . . . the Products," the Union Complaints do not state that Defendant directly sold the Products *to* Plaintiffs. (*See id.* ¶ 43.) Absent a clear allegation that Defendant sold the Products directly to Plaintiffs, and as it is Defendant's burden on a motion to dismiss and the Court must construe all allegations in a light most favorable to Plaintiffs, this ambiguity resolves in favor of Plaintiffs at this stage. Accordingly, Defendant's motion to dismiss Plaintiffs' implied warranty claims is denied.

Second, with respect to Plaintiffs' concert of action claims, Defendant contends that Missouri courts do not recognize concert of action claims as independent causes of action. (Def.'s Moving Br. 15.) Rather, Defendant maintains, "concert of action" is merely "one element of a [civil] conspiracy claim." *Id.* (quoting *Blaes v. Johnson & Johnson*, 71 F. Supp. 3d 944, 947-48 (E.D. Mo. 2014)). The Court agrees with Defendant. "[T]he Missouri Supreme Court in *Zafft* rejected the theory [that] a concert of action [claim exists] separate from a conspiracy claim." *Blaes*, 71 F. Supp. 3d at 947-48 (citing *Zafft*, 676 S.W.2d at 245). As Plaintiffs otherwise bring a civil conspiracy claim that survives the Omnibus Motion, and as "concert of action" is not a cognizable claim under Missouri law, Defendant's motion to dismiss Plaintiffs' concert of action claims is granted.

16

        v.      *Punitive Damages and Damages*

Finally, Defendant argues that Plaintiffs' punitive damages and damages claims are not separate causes of actions but elements of or incidental to Plaintiffs' various causes of action. (Def.'s Moving Br. 15-16.) Here again, the Court agrees. *Stern v. Internal Med. Consultants, II, LLC*, 452 F.3d 1015, 1018 (8th Cir. 2006) ("In general, an action and its subject matter is the fact or facts which give rise to a right of action . . . and must not be confused with the damages, even though damages may be one of the essential prerequisites to recovery. Damages may be an element of, but not of itself a cause of action." (quoting *Jackson v. St. Louis–S.F. Ry. Co.*, 211 S.W.2d 931, 1006 (1948))); *see Jones v. Hous. Auth. of Kansas City, Mo.*, 118 S.W.3d 669, 675 (Mo. Ct. App. 2003) (finding punitive damages "do not and cannot exist as an independent cause of action, but such damages are mere incidents to the cause of action and can never constitute the basis thereof" (citing *Gould v. Starr*, 558 S.W.2d 755, 770 (Mo. Ct. App. 1977))). As such, the Court will grant Defendant's motion to dismiss Plaintiffs' punitive damages and damages claims. The Court notes, however, that it makes no finding as to whether Plaintiffs can seek punitive damages or to what extent Plaintiffs can seek damages should they prevail on their claims.

## IV. CONCLUSION

For the reasons set forth above, the Omnibus Motion is granted in part and denied in part.[11] Specifically, the Omnibus Motion is granted as to Plaintiffs Haluzak, Clark, Davis, Hall, Tollis, Wynn, Vanness, and Wellman's concert of action, punitive damages, and damages claims. The Omnibus Motion is also granted in full against Stevens to the extent she pursues claims against

---

[11] The Court declines to consider Defendant's motion for a more definite statement under Rule 12(e) because it too is predicated on extraneous documentation that puts into question whether the Union Complaints contain sufficient specificity as to what product Defendant helped manufacture or process. (*See* Def.'s Moving Br. 8.)

17

Defendant. The Omnibus Motion, however, is denied as to any remaining claims brought against Defendant by Plaintiffs Haluzak, Clark, Davis, Hall, Tollis, Wynn, Vanness, and Wellman. An appropriate Order will follow.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE